# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| WALKER EDISON HOLDCO LLC, *et al.*, | Case No. 25-11602 (TMH) |
| Debtors.[1] | (Joint Administration Requested) |
| | **Re: D.I. 15** |

**DECLARATION OF DREW MCMANIGLE IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT
TO 11 U.S.C. § 364, (II) AUTHORIZING USE OF CASH COLLATERAL,
(III) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361,
363 AND 364, AND (IV) SCHEDULING A FINAL HEARING
AND (V) GRANTING RELATED RELIEF**

I, Drew McManigle, hereby declare as follows under penalty of perjury:

1. I am the founder and CEO of MACCO Restructuring Group, LLC (MACCO), the proposed restructuring advisor to the above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"):

2. I am authorized to submit this declaration ("Declaration") on behalf of MACCO. I submit this Declaration on behalf of the Debtors in support of the *Debtors' Motion for Interim and Final Orders (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Walker Edison Holdco LLC (8817); Walker Edison Intermediate, LLC (3363); Walker Edison Furniture Company LLC (6576); and EW Furniture, LLC (6288). The Debtors' mailing address is Walker Edison Furniture Company, LLC, 1553 W 9000 S West Jordan, UT 84088.

1

"DIP Motion")[2], filed contemporaneously herewith. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Company's operations and finances gleaned during the course of my engagement with the Company, my discussions with the Debtors' senior management, members of the Debtors' proposed counsel, Morris, Nichols, Arsht & Tunnell LLP, the Debtors' proposed investment banker, Lincoln International LLC, and the Debtors' other advisors, as well as my review of relevant documents and/or my opinion based upon my experience and knowledge of the Debtors' operations and financial condition.

3.      If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents and/or opinion.

## Background and Qualifications

4.      MACCO is a financial advisory services company founded in 2019 that focuses on middle market companies. With a diverse group of professionals with a wealth of experience, MACCO provides operational leadership, business turnaround, and bankruptcy services. MACCO specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.

5.      MACCO's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages. MACCO's professionals have substantial experience in business restructuring and bankruptcy proceedings.

---

[2]  Capitalized terms not defined herein are used as defined in the DIP Motion.

6. MACCO's professionals have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous cases, including the following: *Cred, Inc., et al.*, Case No. 20-12836 (Bankr. D. Del.); *Sorrento Therapeutics, Inc, et al.*, Case No. 23-90085 (Bankr. S.D. Tex.); *Cleveland Integrity Services, et al.*, Case No. 23-90052 (Bankr. S.D. Tex.); *Victerra Energy Holding Co., LLC, et al.*, Case No. 20-32487 (Bankr. S.D. Tex.); *Watson Grinding & Manufacturing Co. and Watson Valve Services, Inc.*, Case No. 20-30967 (Bankr. S.D. Tex.); *Brilliant Energy, LLC*, *et al.*, Case No. 21-30936 (Bankr. S.D. Tex.); *High Mesa, Inc., et al.*, Case No. 20-30602 (Bankr. S.D. Tex.); *GWG Holdings, Inc., et al.*, Case No. 22-90032 (Bankr. S.D. Tex.); *LaForta – Gestão E Investimentos, Sociedade Unipessoal LDA*, Case No. 22-90126 (Bankr. S.D. Tex.); *Matra Petroleum USA, Inc., et al.*, Case No. 19-34190 (Bankr. S.D. Tex.); *Minerva Resources, LLC, Cronus Mineral Holdings, LLC*, Case No. 22-32291 (Bankr. S.D. Tex.); *Escambia Operating CO., LLC*, Case No. 23-50491 (Bankr. S.D. Miss.).

7. Since founding MACCO, I have advised troubled and underperforming companies in the areas of liquidity management, cash flow forecasting, business plan development, evaluation of strategic alternatives, contingency planning, Chapter 11, among others. I have led multiple complex financial advisory engagements.

8. I have over 32 years of executive suite leadership with extensive experience in operational and financial management. I have provided audit and business advisory services to hundreds of businesses during my career. My global experience extends across a variety of industries including oil & gas, healthcare, consumer products, agriculture, diverse manufacturing, commercial construction, hospitality and cannabis.

9. I held many leadership and fiduciary roles including Chief Executive Officer, Chief Restructuring Officer, chapter 11 trustee, receiver, assignee, and independent director, including :

3

- Served as an Independent Director for one of the largest and most technologically advanced biomass power plants in the U.S., providing strategic guidance before and after its Chapter 11 filing;
- Acted as Chapter 11 Trustee for a natural gas and by-products manufacturer based in Alabama;
- Appointed Interim CEO and Chairman of the Board for a publicly traded company, where I led a successful six-month business turnaround;
- Served as Winddown Manager for a private equity-backed oilfield services company, managing complex business, legal, and operational issues that culminated in a successful resolution and distribution to the secured creditor;
- Selected as one of six initial professionals chosen to serve as a sub-chapter V, small business chapter 11 trustee for the Southern District of Texas, Houston Division and successfully oversaw over 20 small business cases.

### MACCO's Retention

10. Prior to the Petition Date, in June 2025, the Debtors retained MACCO to act as the Debtors' financial advisor. Since commencing its engagement, the MACCO team has, among other things: (i) assisted the Debtors in assessing their liquidity and projected cash flows, (ii) reviewed and analyzed the Debtors' financing needs, (iii) assisted the Debtors with determining the amount required for the DIP Facility, including assessing management's budget forecast which were used as the basis to develop the 13-week cash flow budget, and (v) assisted the Debtors and their counsel in the preparation for the commencement of these Chapter 11 Cases.

11. Throughout its engagement, MACCO has worked closely with the Debtors' management and other restructuring professionals and has become knowledgeable and familiar with the Debtors' capital structure, liquidity needs and business operations.

### Company Background

12. As discussed in greater detail in the First Day Declaration, the Debtors are a leading supplier of innovative and affordable ready to assemble home furnishings that sells exclusively through global e-commerce platforms.

13. Headquartered in West Jordan, Utah, the Debtors have built a data-driven sourcing and logistics platform that enables integration with major online retailers, including Amazon, Wayfair, Walmart, and others. In addition to third-party platforms, the Debtors also operate their own website to sell products directly to consumers.

14. The Company designs its products, which it sources from low-cost manufacturers (primarily Asia & South America based) and fulfills & drop ships directly to end-customers with 100% of sales derived from e-commerce.

15. Once designed, the Company outsources the manufacturing of its products to one of the numerous manufacturing partners located in Vietnam (51%), Brazil (47%), China (1%) and Malaysia (1%). Products are then primarily shipped from the factory to the Company's warehouse locations, from which they are drop-shipped directly to end customers. This supply chain allows for nearly all products to be shipped same day, with the ability to deliver to 90%+ of end customers within two days.

### Debtors' Need for DIP Loans and Access to Cash Collateral

16. In preparation for the commencement of these Chapter 11 Cases, the Debtors and their advisors analyzed how much financing would be required to operate the Debtors' business and fund the administrative costs of this Chapter 11 process. As part of this analysis and the overall evaluation of the Debtors' liquidity position, MACCO assisted in the development of the Debtors' 13-week cashflow forecast by using and reviewing and data and inputs provided by the Debtors' forecasted cashflow during these Chapter 11 Cases (the "Initial DIP Budget"), which takes into account anticipated cash receipts and disbursements during the projected period and considers a number of factors, including, but not limited to, the Company's operations as described above, the effect of a Chapter 11 filing on the operations of the business, restructuring costs (including

professional fees) and required operational payments.

17. Based on this analysis, the Debtors and their advisors determined that they would require incremental new money liquidity of approximately $6.0 million to operate post-petition, satisfy all anticipated administrative costs and expenses and pursue a sale transaction.

18. In connection with my role as proposed restructuring advisor to the Debtors, I am familiar with the Debtors' immediate liquidity needs. Based on my experience in the restructuring industry generally and my experience with the Debtors in particular, I believe that approval of the proposed DIP Facility and use of Cash Collateral is essential for the continued normal course operation of the Debtors' business and the successful completion of a going-concern sale transaction.

19. It is my view that without the DIP Facility, the Debtors will not have sufficient liquidity to continue their operations and effect an asset sale/going-concern sale transaction. It is, therefore, my belief that the relief sought herein is necessary to enable the Debtors to operate post-petition, pursue the sale process and avoid immediate and irreparable harm to the Debtors' estates.

20. It is my belief that without a prompt grant of authority to obtain financing on the terms proposed under the DIP Facility, the Debtors will be unable to pay operating expenses, payroll obligations and the costs of administering these Chapter 11 Cases. Immediate access to the DIP Facility will assist the Debtors in stabilizing and maintaining their business and will help restore the confidence of the Company's vendors and employees at this critical stage of the Debtors' sale process.

21. Based on the Initial DIP Budget and other information made available to me, the liquidity provided under the proposed DIP Facility will assist the Debtors in executing an asset/going-concern sale transaction. As such, in my opinion, the approval of the DIP Facility is

necessary and appropriate under the circumstances.

### **Debtors' Need for Interim Relief**

22. As of the Petition Date, I understand the Debtors have approximately $346,656.44 of cash on hand. The Debtors anticipate that Chapter 11 expenses, primarily the payment of amounts sought pursuant to the various motions seeking immediate or expedited relief, will increase the strains on the Debtors' cash position during the initial stages of the Chapter 11 Cases. During the first four weeks following the Petition Date, the Debtors' available cash will be negative without access to the proceeds under the proposed DIP Facility. Therefore, in my professional opinion, without access to interim funding under the DIP Facility, the Debtors' ability to continue their operations during the first weeks of these cases would be in severe jeopardy.

23. Further, the Debtors believe that access to committed financing today will help quell uncertainty among the Debtors' employees, vendors and partners by providing immediate assurance that the Debtors will have the necessary funding to bridge to an asset/going-concern sale transaction.

24. For the reasons set forth herein and in the DIP Motion, I believe that obtaining financing in accordance with the terms of the proposed DIP Facility is essential to the Debtors' ability to minimize disruptions and avoid immediate and irreparable harm to their estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: August 28, 2025
Columbia, Maryland

By: *Drew McManigle* _____
Drew McManigle
Founder and CEO
MACCO Restructuring Group, LLC, Proposed
Restructuring Advisor to the Debtors