## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Walker Edison Holdco LLC, *et al.*,[1] | Case No. 25-11602 (TMH) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 18 |
| | Hearing Date: Sept. 15, 2025 at 3:00 p.m. (ET) |
| | UST Obj. Deadline: Sept. 11, 2025 at 4:00 p.m. (ET) |

### UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR AN ORDER, *INTER ALIA*, APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, hereby objects (this "Objection") to the *Debtors' Motion for (I) An Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Approving the Debtors' Entry Into Stalking Horse Agreement and Related Bid Protections; (C) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (D) Scheduling an Auction and Sale Hearing; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief; (II) An Order (A) Approving the Sale of the Debtors'*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Walker Edison Holdco LLC (8817); Walker Edison Intermediate, LLC (3363); Walker Edison Furniture Company LLC (6576); and EW Furniture, LLC (6288). The Debtors' mailing address is 1553 W 9000 S, West Jordan, UT 84088.

*Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* [D.I. 18] (the "Bidding Procedures Motion"),[2] and in support of this Objection respectfully states:

## PRELIMINARY STATEMENT

1. The Court should continue the hearing and objection deadline with respect to the Bidding Procedures Motion to allow the Committee to meaningfully weigh in on the Debtors' proposed Bidding Procedures and Sale process.

2. The U.S. Trustee moved to appoint the Committee in these cases with all possible speed, soliciting creditors within 24 hours after the cases filed. Despite these efforts, the Committee was not formed until September 10, 2025. But September 10 was the initial deadline to object to the Bidding Procedures Motion. This means that the Committee had no opportunity to retain counsel before that objection deadline passed, much less vet the proposed Bidding Procedures and determine whether to take a position on their approval.

3. Likewise, the hearing on the Bidding Procedures Motion is currently scheduled for this Monday, September 15, 2025 at 3:00 p.m. This leaves the Committee with just two business days to retain counsel and evaluate the proposed Bidding Procedures before the hearing. This time crunch is prejudicial to the Committee and the creditor body it represents.

4. Accordingly—and consistent with the U.S. Trustee's reservation of rights during the first day hearing in these cases—the U.S. Trustee hereby objects to the Bidding Procedures

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

Motion and respectfully requests an adjournment both of the hearing date and the deadline to object to approval of the proposed Bidding Procedures.

5. If the Court determines that such an adjournment is not warranted, then the Court should deny the Bidding Procedures Motion for at least the following separate and independent reasons:

    (a) **The proposed Bid Protections are not entitled to superpriority expense claim status.** The proposed Sale Order and Stalking Horse APA provide for the Stalking Horse Bidder to receive both a Break-Up Fee and an Expense Reimbursement. The Sale Order and Stalking Horse APA further provide that such Bid Protections shall be treated as an allowed superpriority administrative claim. But the Bankruptcy Code only provides for superpriority expense claims in two scenarios, neither of which applies here.

    (b) **The Debtors, the Committee and the U.S. Trustee should have an opportunity to review and object to any expenses included in the Expense Reimbursement.** The proposed Bidding Procedures fail to provide for any such review period, which is necessary to ensure that the Expense Reimbursement only compensates the Stalking Horse Bidder for actual, necessary costs of preserving the Debtors' estates.

    (c) **The Debtors must provide evidence regarding the sale of personally identifiable information.** The assets to be sold include customer lists and other customer data, but the Debtors have not provided competent evidence regarding whether the Sale requires the appointment of a consumer privacy ombudsman. The Court should require the Debtors to make an adequate evidentiary record before approving the Bidding Procedures.

6. The U.S. Trustee has provided the Debtors with additional informal comments and objections regarding the proposed Bidding Procedures and related documents. The parties continue to discuss these comments and objections in good faith. While the U.S. Trustee is hopeful that the parties will resolve these remaining comments and objections prior to the hearing currently scheduled for September 15, the U.S. Trustee reserves the right to raise any and all objections at that hearing.

## JURISDICTION AND STANDING

7.  This Court has jurisdiction to hear and determine the Bidding Procedures Motion and this Objection pursuant to: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

8.  Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

9.  The U.S. Trustee has standing to be heard on the Bidding Procedures Motion pursuant to 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

**A.    The Chapter 11 Cases**

10. On August 28, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code," or "Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court"), thereby commencing their respective above-captioned chapter 11 cases (the "Chapter 11 Cases").

11. The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

12. On September 10, 2025, pursuant to section 1102(a)(1) of the Bankruptcy Code, the U.S. Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"). D.I. 81.

13. As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases.

**B.  Specific Provisions of the Proposed Bidding Procedures**

   **i.  Superpriority Status for Bid Protections**

14. The proposed Bidding Procedures include (i) a Break-Up Fee in the amount of $700,000, and (ii) an Expense Reimbursement up to an amount not to exceed $500,000. Bidding Procedures Mot., ¶ 13. The proposed order attached to the Bidding Procedures Motion [D.I. 18-1] (the "Proposed Order") provides that the foregoing Bid Protections "shall be treated as an allowed superpriority administrative claim status [sic] in the Chapter 11 Cases pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code[.]" Proposed Order, ¶¶ O, 13.

   **ii.  Amounts Included in the Expense Reimbursement**

15. Pursuant to the Stalking Horse Agreement, the Expense Reimbursement shall consist of "all actual documented fees and expenses incurred in connection with" the Stalking Horse Agreement up to a cap of $500,000. Stalking Horse Agreement, § 7.2(b). The proposed Bidding Procedures fail to provide for any review of such fees and expenses. Instead, the Proposed Order provides only that "[t]he Debtors shall file a notice on the docket of these chapter 11 cases in the event that the Bid Protections are paid by the Debtors or their estates." Proposed Order, ¶ 13.

### iii. Sale of Personally Identifiable Information

16. The Acquired Assets include personally identifiable information ("PII") of consumers such as mailing lists, customer lists and "other customer data bases." Stalking Horse Agreement, § 2.1(d), (e). The Debtors assert that no consumer privacy ombudsman ("CPO") is required in connection with the Sale because "[t]he Debtors [sic] privacy policy specifically allowed the Debtors to transfer some or all of a customer's information if the Debtors were to undergo a business transition, like a merger, acquisition, or sale of all or a portion of their assets." Bidding Procedures Mot., ¶ 57. But the Debtors have not filed a copy of the applicable privacy policy authorizing the sale of PII in this manner, nor have they submitted any other evidence in support of their contention that a CPO is not required here. The U.S. Trustee previously requested copies of any applicable policies, but the Debtors have not responded to that request.

17. The privacy policy currently available on walkeredison.com,[3] which is dated as of May 9, 2024 (the "Privacy Policy"),[4] provides that the Debtors "may … share information with Third Party Providers" if, among other things, "Walker Edison is involved in a merger, acquisition, or sale of all or a portion of its assets, which change you will be notified of as necessary under applicable law(s)[.]" Ex. A, p. 3. The Privacy Policy defines "Third Party Providers" as "third parties [Walker Edison] works with … including but not limited to related entities to Walker Edison or other affiliates[.]" *Id.* at p. 1 ("Fulfilling customer orders and operating our business … necessarily requires Walker Edison or third parties it works with … to receive at least some PII associated with an order.").

---

[3] https://walkeredison.com/pages/privacy (last visited Sept. 11, 2025).

[4] A true and correct copy of the Privacy Policy is attached hereto as **Exhibit A** and incorporated herein by reference.

18. The Privacy Policy further provides that "Walker Edison does not sell PII to third parties for monetary consideration." *Id.* at pp. 3, 5.

## OBJECTION[5]

### I. The Court Should Continue the Hearing Date and Objection Deadline Regarding the Proposed Bidding Procedures.

19. The current timeline for the Court's consideration of the proposed Bidding Procedures denies the Committee the right to meaningfully participate in the Sale process and should be extended.

20. The Debtors seek Court approval of the Bidding Procedures eighteen days into their Chapter 11 Cases. Objections to the Bidding Procedures Motion were due approximately six hours after the Committee's appointment on September 10, 2025. The Committee had no time to retain bankruptcy counsel, vet the Bidding Procedures and determine whether to take a position on their approval. Against that backdrop, pressing forward on the current timeline would be inequitable and prejudicial to the Committee and the creditor body it represents. That is particularly true in these cases, where the Bidding Procedures will govern the proposed sale of substantially all of the Debtors' assets for cash consideration that is less than one-tenth of the Debtors' outstanding secured debt.

21. Similarly, the Debtors' proposed timeline for the Sale would also significantly constrain the ability of the Committee and other parties in interest to meaningfully participate in the Sale process. For example, the proposed Bid Deadline is only twenty-five days into the Chapter 11 Cases, with final Court approval of the Sale after only thirty-two days.

---

[5] This Objection is limited to the relief sought with respect to the Debtors' proposed Bidding Procedures. For the avoidance of doubt, the U.S. Trustee reserves the right to object at the appropriate time to the sale relief requested in the Bidding Procedures Motion.

22. The Debtors contend that an expedited Sale process is warranted because, in their view, "[t]he most likely interested bidders are those who have already … had the opportunity to perform due diligence." Bidding Procedures Mot., ¶ 25. "If new bidders emerge, the proposed timeline," which leaves only one week between Court approval of the Bidding Procedures and the Bid Deadline, "will provide them with sufficient time to perform due diligence given that the process is well understood at this juncture." *Id.*

23. However, due process requires that notice be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of an action and afford them an opportunity to present their objections. *Folger Adam Sec. v. DeMatteis/MacGregor*, 209 F.3d 252, 265 (3d Cir. 2000) (quoting and citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). Accordingly, the U.S. Trustee objects to the Debtors' proposed Bidding Procedures and Sale process, as they fail to allow meaningful participation by the Committee and other parties in interest.

## II. Alternatively, the Court Should Deny the Bidding Procedures Motion.

### A. The Bid Protections Are Not Entitled to Superpriority Expense Claim Status.

24. The Bankruptcy Code provides for "superpriority" claim status only in sections 364(c)(1) and 507(b). Those sections exclusively address (a) parties providing postpetition financing, and (b) secured creditors who have received insufficient "adequate protection" for the postpetition diminution in value of their collateral. The Stalking Horse Bidder is neither. The Debtors do not provide any authority in support of granting the Bid Protections superpriority expense claim status. In fact, the Debtors do not even mention this request for relief in the Bidding Procedures Motion. Any order the Court enters approving the Bidding Procedures should expressly provide that this request for relief is denied and that the Bid Protections shall receive ordinary administrative expense status.

B.   **The Bidding Procedures Should Provide for Review of the Stalking Horse Bidder's Expenses.**

25.   Bid protections must be sought and analyzed under Bankruptcy Code section 503(b). *See In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl., Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999)). The Court's analysis of bid protections under section 503(b) "must be made in reference to general administrative expense jurisprudence. In other words, the allowability of break-up fees, like that of other administrative expenses, depends on the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535.

26.   Applied here, the proposed Bidding Procedures provide for an Expense Reimbursement for the Stalking Horse Bidder capped at $500,000 which covers "all actual documented fees and expenses incurred in connection with" the Stalking Horse Agreement. The Bidding Procedures fail to provide for any review process to ensure that such fees and expenses were actually necessary to preserve the value of the estates. Any order the Court enters approving the Bidding Procedures should: (i) require the Stalking Horse Bidder to provide documentation of all expenses to be reimbursed in connection with the Bid Protections to the Debtors, the Committee and the U.S. Trustee; and (ii) give those parties ten days to object thereto.

C.   **The Debtors Must Provide Evidence Regarding the Sale of PII.**

27.   The Bidding Procedures Motion does not provide sufficient information for the Court or parties in interest to determine whether a CPO needs to be appointed to protect individuals' PII. Section 363(b)(1) of the Bankruptcy Code provides:

> (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of

> personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless –
>
>> (A) such sale or lease is consistent with such policy; or
>>
>> (B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease –
>>
>>> (i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and
>>>
>>> (ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

11 U.S.C. § 363(b)(1).

28. Section 332 of the Bankruptcy Code provides:

> (a) If a hearing is required under section 363(b)(1)(B), the court shall order the United States Trustee to appoint, not later than 7 days before the commencement of the hearing, 1 disinterested person (other than the United States Trustee) to serve as the consumer privacy ombudsman in the case and shall require that notice of such hearing be timely given to such ombudsman.
>
> (b) The consumer privacy ombudsman may appear and be heard at such hearing and shall provide to the court information to assist the court in its consideration of the facts, circumstances, and conditions of the proposed sale or lease of personally identifiable information under section 363(b)(1)(B).

11 U.S.C. § 332(a), (b).

29. Here, the Debtors have failed to provide any evidence that the proposed Bidding Procedures and Stalking Horse Agreement comply with the applicable privacy policy. Based on the Privacy Policy available on the Walker Edison website, the questions that the Debtors must answer regarding the proposed Sale and use of PII include, without limitation: (i) whether the Stalking Horse Bidder is a "Third Party Provider" with whom the Debtors may share customer

10

PII; (ii) whether the proposed Bidding Procedures provide adequate notice to affected customers of the Sale and use of such customers' PII "as necessary under applicable law(s)"; and (iii) whether a CPO is required given the representation in the Privacy Policy that "Walker Edison does not sell its customers' PII for money."

30. The Court should not approve the proposed Bidding Procedures unless the Debtors (i) establish through admissible evidence that a CPO is not required under the Bankruptcy Code, or (ii) amend the Proposed Order to direct the U.S. Trustee to appoint a CPO. Because an evidentiary predicate is necessary on this point, the U.S. Trustee reserves argument until the record at the hearing is closed.

## RESERVATION OF RIGHTS

31. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights to (i) amend or supplement this Objection, and (ii) conduct discovery.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order: (i) adjourning the hearing on the Bidding Procedures Motion and extending the associated objection deadline; (ii) alternatively, denying the Bidding Procedures Motion; and (iii) granting such other and further relief as the Court deems just and equitable.

Dated: September 11, 2025                                Respectfully submitted,

                                                         **ANDREW R. VARA**
                                                         **UNITED STATES TRUSTEE**
                                                         **REGIONS 3 AND 9**

By: */s/ Malcolm M. Bates*
            Malcolm M. Bates
            Trial Attorney
            United States Department of Justice
            Office of the United States Trustee
            J. Caleb Boggs Federal Building
            844 N. King Street, Room 2207, Lockbox 35
            Wilmington, DE 19801
            Telephone: (302) 573-6491
            Email:  Malcolm.M.Bates@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I, Malcolm M. Bates, hereby certify that on September 11, 2025, I caused to be served a copy of the foregoing Objection by electronic service on the registered parties via the Court's CM/ECF system and courtesy copies were served via email on parties in interest.

Dated: September 11, 2025                                    */s/ Malcolm M. Bates*
                                                                                 Malcolm M. Bates