# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WALKER EDISON HOLDCO LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-11602 (TMH)<br><br>(Jointly Administered)<br><br>**Re: D.I. 18** |

## DECLARATION OF PAUL MANISCALCO IN SUPPORT OF THE DEBTORS' BID PROCEDURES AND SALE MOTION

I, Paul D. Maniscalco, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I submit this declaration (the "Declaration") in support of the *Debtors' Motion for (I) an Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007, and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Approving the Debtors' Entry into Stalking Horse Agreement and Related Bid Protections; (C) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (D) Scheduling an Auction and Sale Hearing; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief; (II) an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Walker Edison Holdco LLC (8817); Walker Edison Intermediate, LLC (3363); Walker Edison Furniture Company LLC (6576); and EW Furniture, LLC (6288). The Debtors' mailing address is 1553 W 9000 S, West Jordan, UT 84088.

*of Designated Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* (D.I. 18) (the "Bid Procedures and Sale Motion").[2]

2.  Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the operations and finances of the above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") gleaned during the course of my firm's (MACCO's) engagement with the Company, my discussions with the Debtors' senior management, members of the Debtors' proposed counsel, Morris, Nichols, Arsht & Tunnell LLP, the Debtors' proposed investment banker, Lincoln International LLC, and the Debtors' other advisors, as well as my review of relevant documents and/or my opinion based upon my experience and knowledge of the Debtors' operations and financial condition.

3.  If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents and/or opinion.

## BACKGROUND AND QUALIFICATIONS

4.  I am a Senior Managing Director of MACCO, a financial advisory services company founded in July 2019 and the proposed financial advisor to the Debtors.

5.  MACCO specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. MACCO's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing

---

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bid Procedures and Sale Motion.

and recommending cost reduction strategies; and designing and negotiating financial restructuring packages. MACCO's employees have substantial experience in business restructuring and bankruptcy proceedings. I have spent the last six years with MACCO advising troubled and underperforming companies in the areas of liquidity management, cash flow forecasting, business plan development, evaluation of strategic alternatives, contingency planning, chapter 11, among others. I have led multiple complex financial advisory engagements.

6. I have over 28 years of accounting, auditing and executive suite leadership with extensive experience in operational and financial management. My global experience extends across a variety of industries including real estate, healthcare, online consumer products and ecommerce, cryptocurrency, oil & gas production, biotechnology and mining.

7. I have provided audit and business advisory services to hundreds of businesses during my career. I have a proven record of identifying areas of improvement while developing and implementing bottom-line solutions.

8. Before joining MACCO, I led a business advisory firm providing outsourced Chief Financial Officer services primarily to small and mid-sized publicly-traded companies. Through the business advisory firm, I was appointed as either Interim Chief Financial Officer or Chief Financial Officer of a number of publicly-traded organizations. I worked for the Independent Registered Public Accounting firms, PWC and BDO. I have a Bachelor of Business Administration in Accounting and Bachelor of Health Services in Health Administration from Florida Atlantic University.

9. In addition, MACCO and I have become familiar with the Debtors' businesses, financial affairs, and capital structure. Since the initial pre-petition engagement by the Debtors, MACCO has worked closely with the Debtors' management and other professionals

3

in assisting with the myriad requirements of preparing the companies for their chapter 11 filings. MACCO and I have developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of these cases.

### THE PROPOSED BIDDING PROCEDURES AND SALE TIMELINE ARE CRITICAL TO A SUCCESSFUL GOING-CONCERN SALE UNDER THE CIRCUMSTANCES

10. On August 28, 2025, the Debtors filed the Bid Procedures and Sale Motion. Pursuant to the Bid Procedures and Sale Motion, the Debtors seek, among other things, (i) to establish the schedule and procedures for the value maximizing Sale process in these chapter 11 cases and (ii) authorize the Debtors' entry into the Stalking Horse Agreement with the Stalking Horse Bidder, subject to higher or otherwise better offers.

11. I believe that the proposed sale process, including the timeframe for the postpetition marketing of the Debtors' business and assets, the submission and consideration of bids, and the auction, is reasonable and appropriate and will enable the Debtors to seek the highest value for their assets under the circumstances. The Debtors' liquidity is stressed, and their business and assets cannot endure an extended stay in chapter 11. Put simply, the Debtors cannot afford a longer sale process because the DIP Facility is contingent on closing a sale within this timeline.

12. The Debtors' liquidity forecast and Initial DIP Budget do not permit a drawn-out sale process in these chapter 11 cases. As part of an evaluation of the Debtors' liquidity position, the Debtors, in conjunction with MACCO and the other advisors, prepared a weekly cash flow forecast (the "Initial DIP Budget"), a copy of which is attached to the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use of Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a*

*Final Hearing, and (VI) Granting Related Relief* (D.I. 52), which takes into account anticipated cash receipts and disbursements during the projected period and considers a number of factors, including, but not limited to, the effect of a chapter 11 filing on the operations of the business, the fees and interest expense associated with the DIP Facility and consensual use of cash collateral, restructuring costs (including professional fees), required operational payments, and the Initial DIP Budget's reliance on the anticipated receipt of Sale proceeds by the end of September, which aligns with the current Sale timeline proposed in the Bid Procedures. Given the Debtors' liquidity position, I believe that maximizing the value of the Debtors' estates requires a Sale process on the timeline provided in the Bid Procedures and Sale Motion. Moreover, the milestones under the DIP Facility contemplate a Sale process on the timeline proposed in the Bid Procedures and Sale Motion.

13. Further, due to continuing losses being experienced by the Debtors and because the Debtors cannot afford to replenish their inventory at this time, a sale to the Stalking Horse Bidder or another Successful Bidder must be completed expeditiously on the proposed timeline set forth in the Bid Procedures and Sale Motion so that the value of the Acquired Assets do not erode (diminishing any purchase price due to a working capital adjustment) and to ensure that the Stalking Horse Bidder or other Successful Bidder has the time to take over the Debtors' business lines and integrate the Debtors' employees before the holiday season begins.

14. Accordingly, I believe that an Auction process culminating in a sale on the Debtors' proposed timeline will maximize the value of the Debtors' estates. As such, I believe the expedited Sale process set forth in the Bidding Procedures is in the best interest of the Debtors and their stakeholders.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth herein, the foregoing is true and correct.

Dated: September 12, 2025

                                              By: */s/ Paul D. Maniscalco*
                                                      Paul D. Maniscalco
                                                      Senior Managing Director
                                                      MACCO Restructuring Group, LLC,

                                                      *Proposed Financial Advisor to the Debtors*