**<u>Exhibit B</u>**

**Reply**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| WEH Liquidating, LLC, *et al.*, | Case No. 25-11602 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 286, 287, 307, 315 & 316** |

**DEBTORS' REPLY TO UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE COMBINED
DISCLOSURE STATEMENT AND PLAN ON AN INTERIM BASIS FOR
SOLICITATION PURPOSES ONLY; (II) ESTABLISHING PROCEDURES FOR
SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE
COMBINED DISCLOSURE STATEMENT AND PLAN; (III) APPROVING THE FORM
OF BALLOT AND SOLICITATION PACKAGES; (IV) ESTABLISHING THE VOTING
RECORD DATE; (V) SCHEDULING A COMBINED HEARING FOR FINAL
APPROVAL OF THE ADEQUACY OF DISCLOSURES IN, AND
CONFIRMATION OF, THE COMBINED DISCLOSURE STATEMENT
AND PLAN; (VI) APPROVING THE FORM OF COMBINED HEARING
NOTICE, AND (VII) GRANTING RELATED RELIEF**

WEH Liquidating, LLC, and its affiliates, formerly known as Walker Edison

Holdco LLC, (collectively, the "Debtors"), each of which is a debtor and debtor in possession in

the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby file this reply to the United

States Trustee for the District of Delaware's (the "U.S. Trustee") Objection (the "Objection" or

"Obj.") to the *Debtors' Motion for Entry of an Order (I) Approving the Combined Disclosure*

*Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing*

*Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure*

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: WEH Liquidating, LLC (8817); WEI Liquidating, LLC (3363); WEFC Liquidating, LLC (6576); and EWF Liquidating, LLC (6288).  The Debtors' mailing address is 6890 S 2300 E #71067, Salt Lake City, UT 84171.

*Statement and Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined Disclosure Statement and Plan; (VI) Approving the Form of Combined Hearing Notice, and (VII) Granting Related Relief* (D.I. 287) (the "Solicitation Procedures Motion") and the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Walker Edison Holdco LLC and Its Debtor Affiliates* (D.I. 286) (the "Combined Disclosure Statement and Plan," the "Disclosure Statement," or the "Plan," as applicable).[2]  For the reasons outlined below, the Objection should be overruled.

## REPLY

1.    No creditor or party with an economic interest in these Chapter 11 Cases has objected to the interim approval of the Combined Disclosure Statement and Plan or the entry of the Solicitation Motion.  The only party opposing the interim approval is the U.S. Trustee.

2.    While the Objection is couched as a disclosure objection under section 1125 of the Bankruptcy Code to an allegedly "patently unconfirmable" plan, the U.S. Trustee spends the twenty-six pages of its Objection arguing about one issue—the alleged impermissibility of the *consensual* third party releases found in the Combined Disclosure Statement and Plan and implemented in the solicitation materials the Debtors seek to have approved by the Solicitation Motion.[3]  The Objection contains the same theory that this Court and courts around the country

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan.

[3]    The Debtors submit that the Combined Disclosure Statement and Plan contains more than adequate information pursuant to section 1125 of the Bankruptcy Code, and that the U.S. Trustee's Objection is an attempt to argue an issue that should be reserved for the hearing on final approval of the Disclosure Statement and confirmation of the Plan.  However, as long as the U.S. Trustee is barred from relitigating the issue at the final hearing, the Debtors have no issue with moving forward with this dispute at the interim hearing on November 12, 2025.

have repeatedly rejected.  *See, e.g.*, *In re Nikola Corp.*, *et al.*, No. 25-10258 (TMH) (Bankr. D. Del. 2025); *In re Molecular Templates, Inc.*, No. 25-10739 (BLS) (Bankr. D. Del. 2025); *In re Spirit Airlines, Inc.*, No. 24-11988 (Bankr. S.D.N.Y. 2024);  *In re Number Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. 2024); *In re Fisker, Inc.,* No. 24-11390 (TMH) (Bankr. D. Del. 2024); *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. 2024); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. 2022); *In re Robertshaw US Holding Corp.*, No. 24-90052 (CML) (Bankr. S.D. Tex. 2024); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. 2024); *In re Bowflex Inc.*, No. 24-12364 (ABA) (Bankr. D. N.J. 2024).  This Court should do the same again in these cases and overrule the U.S. Trustee's Objection.

I.      **The Third-Party Releases Are Appropriate and Consensual Under Applicable Law.**

3.      The U.S. Trustee's Objection is based entirely on its assertion that the third-party releases provided for in Section 10.7 of the Plan (the "<u>Voluntary Release</u>") are non-consensual. *See* Obj. ¶ 32.  To reach this conclusion, the U.S. Trustee seemingly relies on the Supreme Court's decision in *Harrington v. Purdue Pharma, L.P.*, to argue that "the release must be consensual under . . . applicable state contract law."  *See* Obj. ¶ 38.  The U.S. Trustee then argues the Voluntary Release is not consensual under state law in the balance of its Objection.  But the U.S. Trustee's attempt to make it sound like the Supreme Court has held that "the release must be consensual under . . . applicable state contract law."  In fact, it was just the opposite.  In the final paragraph of the *Purdue Pharma* majority option, the Supreme Court states:

> As important as the question we decide today are ones we do not. Nothing in what we have said should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan; those sorts of releases pose different questions and may rest on different legal grounds than the nonconsensual release at issue here. *See, e.g., In re Specialty Equipment Cos.*, 3 F.3d 1043, 1047 (CA7 1993). ***Nor do we have occasion today to express a view on what qualifies as a consensual release*** or pass upon a plan that provides for the full satisfaction of claims against a third-party nondebtor***.*** Additionally, because

> this case involves only a stayed reorganization plan, we do not address whether our reading of the bankruptcy code would justify unwinding reorganization plans that have already become effective and been substantially consummated. Confining ourselves to the question presented, we hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.

*Purdue Pharma*, 603 U.S. 204, 226–27 (2024).  The U.S. Supreme Court has **explicitly declined** to weigh in on the argument that the U.S. Trustee makes in its Objection.  And it certainly did not rule that consensual releases in bankruptcy must follow state contract law.

4.      In fact, the existing, longstanding precedent of this Court and others within the Third Circuit is to approve third-party releases where creditors have the opportunity to opt out, consistently finding that such opt-out release provisions are consensual.  *See In re Nikola Corp.*, *et al.*, No. 25-10258 (TMH) (Bankr. D. Del. 2025) (D.I. 1029) Hr'g Tr. No. 132:25—133:1-9[4] (approving an opt out mechanism that provided clear and conspicuous notice); *In re Fisker, Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. Oct. 11, 2024) (D.I. 706) Hr'g Tr. No. 44:20-45:11 (finding that "in light of *Purdue*, there is no prohibition on the use of opt-out releases"); *In re Amyris Inc.*, Case No. 23-11131 (TMH) (Bankr. D. Del. Feb. 2, 2024) (D.I. 1238) Hr'g Tr. No. 6:9-14 (approving consensual third-party releases with an opt-out feature because "the opt-out adequately protects parties' rights and appropriately indicates whether a party would consent to the releases"). Specifically, this Court, and many others, have adopted the "due process analysis" to determine whether opt outs are consensual, recognizing that this approach has been applied by "the majority of courts . . . over a period of many, many years."  *In re Nikola Corp.*, *et al.*, No. 25-10258 (TMH) (Bankr. D. Del. 2025) (D.I. 1029) Hr'g Tr. No. 132:20–25.  Accordingly, most of the cases cited

---

[4]      The hearing transcripts cited to in this section are voluminous and therefore not attached.  Should the Court require a copy of any of these transcripts, the Debtors will make them available.

in the Objection, as well as the bulk of its analysis which rest on a contractual theory, are inapposite to the analytical framework this Court employs in assessing whether the due process requirements of the Fifth Amendment have been satisfied.

5.      Additionally, Judges Dorsey, Shannon, and Stickles had occasion to address this same issue.  In *FTX Trading Ltd.*, Judge Dorsey addressed the U.S. Trustee's objection to the plan's third-party releases under *Purdue* and determined that:

> [T]he Supreme Court was not saying that third-party consensual releases through an opt-out process are per se improper.  I think opt-out releases remain a valid way for a debtor to be able to obtain releases through the plan process and do so on a consensual basis because the parties are given the opportunity to opt out; if they don't opt out or if they don't return a ballot at all, then they're presumed to have opted out. And I don't have any issues with that process per se.

No. 22-11068 (JTD) (Bankr. D. Del. Oct. 7, 2024) (D.I. 26412) Hr'g Tr. No. 115:25-116:8. Specifically, Judge Dorsey approved the opt-out in *FTX* because it was limited in scope and notice was given through ballots and publication notice—comparing it to the notice required in the class action context.  *Id*. at 116:10-117:2.

6.      Further, Judge Shannon and Judge Stickles have both overruled similar objections by the U.S. Trustee regarding third-party releases, agreeing that *Purdue* did not change the law on consensual third-party releases and applicable law continues to permit courts to approve opt outs in chapter 11 cases.  *See In re Molecular Templates, Inc.*, No. 25-10739 (BLS) (Bankr. D. Del. July 1, 2025) (D.I. 188) Hr'g Tr. No. 37:18-21 (affirming *Indianapolis Downs* and holding "the opt out structure [] when properly implemented, is indeed effective to provide for releases under a confirmed chapter 11 plan"); *In re Gigamonster*, No. 23-10051 (JKS) (Bankr. D. Del. Aug. 27, 2024) Hr'g Tr. No. 64:19–22 (determining that "the Supreme Court declined to express a view on what constitutes a consensual release or the procedural mechanism to obtain a consensual release"); *see also In re Number Holdings, Inc.,* No. 24-10719 (JKS) (Bankr. D. Del. Jan. 24, 2025)

(D.I. 1756) Hr'g Tr. No. 27:12-15 (finding an opt out consensual where it applied to parties who affirmatively made the decision to submit a ballot and did not check the opt out box).

7.      Courts in other districts addressing this same issue have agreed.  In the time since *Purdue Pharma*, objections asserting the exact same arguments found in the Objection have been made by U.S. Trustees across the country and have been overruled.  For example, in *In re Robertshaw U.S. Holdings Corp.*, Judge Lopez expressly rejected and overruled the U.S. Trustee's arguments (similar to those raised here), noting that "[t]he Trustee wants to use the *Purdue* holding as an opportunity to advance its long-held position that consensual third-party releases in a plan should require an opt-in feature, rather than an opt-out."  2024 WL 3897812, at *17 (Bankr. S.D. Tex. Aug. 16, 2024).  In rejecting the U.S. Trustee's argument, Judge Lopez opined that "[t]here is nothing improper with an opt-out feature for consensual third-party releases in a chapter 11 plan" and it had not been altered by *Purdue*.  *Id.*  As will be the case here, in *Robertshaw*:

> Parties in interest were provided detailed notice about the Plan, the deadline to object to plan confirmation, the voting deadline, and the opportunity to opt out of the third-party releases.  The Disclosure Statement included a detailed description about the third-party releases and the opt-out . . . ballots were sent to holders of Claims in voting classes. . . . All ballots provided claimants an opportunity to opt out.  Non-voting parties . . . received a Notice of Non-Voting Status that offered a chance to opt out too.  The ballots and the Notice of Non-Voting Status allowed parties to carefully review and consider the terms of the third party release and the consequences of electing not to opt-out.

*Id*. at *18.

8.      Similarly, in *In re Bowflex Inc.*, No. 24-12364 (ABA) (Bankr. D. N.J.), Judge Altenburg confirmed, over the U.S. Trustee's objection, a plan which contained third-party releases and an opt-out mechanism similar to that at issue here.  At the confirmation hearing, Judge Altenburg determined that *Purdue* "did not determine what constitutes a consensual release" and that courts "must look to guidance from ***current*** case law." Hr'g Tr. Aug. 19, 2024, 65:17–21 (emphasis added).  Judge Kaplan reached the same conclusion in *In re Invitae Corporation*, No.

24-11362 (MBK) (Bankr. D. N.J.), overruling the U.S. trustee's objection on the same basis and approving the third-party releases.  Hr'g Tr. Jul. 23, 2024, 14:19–23.

9.      The analysis employed by, and ultimate conclusion of, bankruptcy courts addressing this issue over the past year applies with equal force here—i.e., *Purdue Pharma* did not change the law on consensual third-party releases, and applicable law continues to permit this Court to approve the Voluntary Release in these Chapter 11 Cases.  The Voluntary Release here is a proper, consensual release, and the scope of the Voluntary Release is necessary for the consummation of the Plan, warranted under the circumstances, clearly permitted by the applicable law, and should be approved as proposed.

10.      The Debtors submit that the Voluntary Release is consensual and consistent with the law in this circuit.  The ballots submitted for approval by this Court and set to be distributed to Holders entitled to vote on the Plan (in Class 3 and Class 4) conspicuously quote the full text of the release in bold, capitalized font and clearly describe the implications of granting the Voluntary Release.  Additionally, the election forms set to be distributed to holders entitled to opt out of the Voluntary Release (in Class 1 and Class 2) are being distributed with the entire text of the Injunction, Exculpation, and Release Provisions and instructions that plainly provide the proper notice recipients would need to opt out of the Voluntary Release.  Moreover, through the Disclosure Statement, Notice of Non-Voting Status, and other noticing materials, all creditors will receive clear and comprehensive notice of the Voluntary Release, its effect under Article X of the Plan, and their right to opt out.

11.      Furthermore, the Debtors' Plan takes additional measures to ensure that the Voluntary Release is in fact voluntary by excluding those deemed to reject and not entitled to vote on the Plan (Class 5) from the definition of "Releasing Parties."

12.     Therefore, the Debtors believe that ample notice will be provided and that the extensive noticing program outlined above complies with this Court's approach to due process in the context of opt outs.  *See In re Nikola Corp., et al.*, Case No. 25-10258 (TMH) (Bankr. D. Del. August 8, 2025) (D.I. 1029) Hr'g Tr. 71:19-25—72:1-8, 132:3-15 (adopting the due process approach, which prioritizes transparent and prominent notice, over the contract theory approach adopted by Judge Goldblatt in *Smallhold*, to determine that opt outs which did not apply to holders of equity or any non-voting class to be permissible).

13.     For these reasons, the Voluntary Release should be approved as consensual with respect to all creditors in Classes 1, 2, 3, and 4, who do not opt out of the Voluntary Release.

**II.     The Debtor Releases are Appropriate and Adequately Described.**

14.     The other objections raised by the U.S. Trustee are equally unpersuasive.  The U.S. Trustee argues that the Plan does not identify all parties who will be the recipients of the Voluntary Release, as the definition of "Released Parties" includes "Related Parties."  *See* Obj. ¶ 29. However, the Plan clearly states that Related Parties, including directors, managers, officers, equity holders, predecessors, successors, assigns, managed accounts or funds, advisors, employees, agents, attorneys, and other representatives, are being released and are granting consensual releases *solely in their capacity as such.  See* Plan, Art. 1.129.

15.     This definition is not vague, and this court has routinely approved debtor and third-party releases that apply to persons identified only by categories, such as directors, managers, officers, and other professionals.  *See Gigamonster*, Aug. 27, 2024, Hr'g. Tr. No. 66:4–7 ("The scope for the third-party release limits the definition of related persons.  The provision [of 'Related Persons,' which includes 'agents . . . attorneys, accountants, investment bankers, investment advisors, investment managers, consultants, representatives, and other professionals, advisors'] is

consistent with definitions used in other cases in this district."); *In re Dynata, LLC*, No. 24-11057 (TMH) (Bankr. D. Del. July 2, 2024) (D.I. 195); *In re NVN Liquidation, Inc. (f/k/a NOVAN, INC.)*, No. 23-10937 (LSS) (Bankr. D. Del. Jan. 26, 2024) (D.I. 568); *In re American Eagle Delaware Holding Company LLC*, No. 22-10028 (JKS) (Bankr. D. Del. Apr. 27, 2022) (D.I. 328).

16.     The U.S. Trustee also notes that "[t]he Debtors' and Committee's professionals are receiving these releases notwithstanding the fact that they are also included in the definition of "Exculpated Parties." *See* Obj. 30.  However, the language of the Plan limits the Committee's releases to just acts in connection with their "fiduciary duties to the Estates," so it is co-extensive with any exculpation provided for in the Plan.  And both sets of professionals, as well as the others receiving the releases and exculpations, have undertaken significant actions to earn such consideration.  Which again, is entirely consensual.

17.     For these reasons, the U.S. Trustee's Objection should be overruled.

Dated: November 10, 2025
        Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Daniel B. Butz*
Robert J. Dehney, Sr. (No. 3578)
Donna L. Culver (No. 2983)
Daniel B. Butz (No. 4227)
Scott D. Jones (No. 6672)
Jonathan M. Weyand (No. 6959)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@morrisnichols.com
        dculver@morrisnichols.com
        dbutz@morrisnichols.com
        sjones@morrisnichols.com
        jweyand@morrisnichols.com

*Counsel to the Debtors and Debtors in Possession*